NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDNA DIANE BOWMAN and AMY McHENRY, | Hon. Dennis M. Cavanaugh |
| Plaintiffs, | OPINION |
| v. | Civil Action No. 10-cv-4403 (DMC) (MF) |
| RAM MEDICAL, INC., AMERIMED CORP., HENRY SCHEIN, INC., MARATHON MEDICAL CORP., MEDLINE INDUSTRIES, MMS-A MEDICAL SUPPLY CO., and Q-MED CORP., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the motion by Defendants RAM Medical, Inc., Henry Schein, Inc., Marathon Medical Corp., Medline Indus., MMS-A Medical Supply Co. and Q-Med Corp. (collectively, "Defendants") (ECF No. 34) to dismiss Plaintiff's complaint (ECF No. 1), filed on January 31, 2011. An amended motion to dismiss was filed by Defendants on September 30, 2011 (ECF No. 51). Defendant C.R. Bard, Inc. filed a motion to dismiss on April 23, 2012 (ECF No. 55). Pursuant to FED.R.CIV.P. 78, which states that the court has the authority to provide for submitting and determining the motions on briefs without oral hearings, no oral argument was heard.

I. BACKGROUND
   A. **Factual Background**

Defendants are in the business of marketing, distributing, selling, manufacturing or causing to be manufactured the surgical mesh at issue in this litigation. (Pl.'s Compl. ¶ 35, Aug. 26, 2010, ECF

No. 1). Defendants, at all relevant times, allegedly sold surgical mesh as sterile, Food and Drug Administration ("FDA") approved, indicated for surgical use and Bard-manufactured. Id. at ¶ 36. Plaintiffs bring this action on behalf of themselves and putatively on behalf all other similarly situated persons "in the United States who had Defendants' counterfeit surgical mesh surgically implanted from September 1, 2007 until the present." (Pl.'s Compl. ¶ 26). The Complaint includes specific information about two Plaintiffs, Edna Diane Bowman and Amy McHenry. On December 1, 2009, Plaintiff Edna Diane Bowman underwent a surgical procedure at Lexington Medical Center in West Columbia, South Carolina ("LMC"), during which Defendants' counterfeit mesh was implanted in her body. Id. at ¶ 40. On February 23, 2010, Plaintiff Amy McHenry underwent a laparoscopic hernia repair procedure at LMC, during which Defendants' counterfeit mesh was implanted in her abdomen. Id. at ¶ 37. On July 19, 2010, Plaintiff Bowman received a letter from LMC informing her that the surgical mesh implanted during her surgery was "counterfeit surgical mesh." Id. at ¶ 51. On July 15, 2010, Plaintiff McHenry received a letter from LMC informing her of the same. Id. at ¶ 49.

Essentially, Plaintiffs claim that a counterfeit product was used during surgery without their consent or knowledge. However, Plaintiffs cite no physical injury or harm resulting. Plaintiffs state their claims in five counts including: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), (2) unjust enrichment and common law restitution, (3) breach of express warranty, (4) breach of implied warranty of merchantability and (5) breach of implied warranty of fitness for a particular purpose. Plaintiffs contend the nature of the action involves false, misleading, inaccurate, deceptive and unconscionable commercial practices. (Pl.'s Compl. ¶ 1).

Plaintiffs explain that their belief was that the surgical mesh implanted was: (1) Bard-manufactured, (2) sterile, (3) approved for use by the FDA, and (4) indicated for surgical use. (Pl.'s

2

Compl. ¶ 47). Plaintiffs claim that in the condition in which Defendants sold their counterfeit mesh, the mesh had zero value. Id. at ¶ 48. Further, Plaintiffs state that had they known that Defendants' surgical mesh was not as represented, they would not have purchased, or agreed to purchase of the surgical mesh for use during the surgical procedures. Id. at ¶ 54. The only ascertainable loss Plaintiffs allege is the purchase price of a product they believed to be something else. Id. at ¶ 55. Plaintiffs vaguely state they "will incur [future] costs to repair the damages caused by Defendants' unlawful activity," but omit to further explain such "repairs." Id.

Plaintiffs seek relief that includes: class certification; declarations that Defendants' unlawful actions violate the NJCFA, breach express and implied warranties of merchantability and implied warranties of fitness, and unjustly enrich Defendants; orders directing disgorgement of profits derived from unlawful practices, compelling Defendants to reimburse Plaintiffs in an amount equal to their ascertainable loss, and treble damages pursuant to N.J.S.A. 56:8-1 et seq.; restitution; and, attorney's fees. (Pl.'s Compl. ¶ 93).

**B.     Procedural Background**

This matter comes before the Court upon the motion by Defendants RAM Medical, Inc., Henry Schein, Inc., Marathon Medical Corp., Medline Indus., MMS-A Medical Supply Co. and Q-Med Corp. (collectively, "Defendants") (ECF No. 34) to dismiss Plaintiff's complaint (ECF No. 1), filed on January 31, 2011. An amended motion to dismiss was filed by Defendants on September 30, 2011 (ECF No. 51). This Court sua sponte consolidated the Calo Action (Docket No. 11-cv-7381) with this matter on April 17, 2012.

3

Defendant C.R. Bard, Inc. filed a motion to dismiss on April 23, 2012 (ECF No. 55).[1] Plaintiff Irene Kirk Calo then filed a motion to voluntarily dismiss her action, without prejudice, on May 21, 2012 (ECF No. 58), which this Court **granted** (ECF No. 58) pursuant to FED. R. CIV. P. 41(a)(2).

## II.  STANDARD OF REVIEW

In deciding a motion to dismiss, the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to [the Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). The Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, when their truth is assumed, those factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555. Plaintiff's obligation "requires more than labels and conclusions." Id. at 545. To survive a motion to dismiss, the complaint must state a plausible claim, not merely conclusory statements deriving from assumptions or inferences. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, it is well-established that a court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." M & M Stone Co. v. Pa., 388 Fed.Appx. 156, 162 (3d Cir.

---

[1] Thereafter, Plaintiff Calo and C.R. Bard, Inc. stipulated to dismissal of Plaintiff's claims against C.R.Bard, Inc. with prejudice on May 29, 2012. Since Calo's motion for voluntary dismissal was granted on this day, this point is moot.

2010).

### III. DISCUSSION

### A. STANDING

As an initial matter, this Court must discuss whether jurisdiction is founded in this case, given the requirements of Article III. Defendants say Plaintiffs lack standing because they state no injury in fact. (Def.'s Am. Mot. Dismiss 1, Sept. 30, 2011, ECF No. 51). Under Article III, federal judicial power is restricted to cases and controversies. Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008). The case-or-controversy requirement means that Plaintiff must establish standing. Id. Without standing, the federal court lacks subject matter jurisdiction and must dismiss the action. Common Cause of Pa. v. Pa., 558 F.3d 249, 257 (3d Cir. 2009). Article III standing requires adequate establishment of: 1) an injury in fact, 2) causation, and 3) redressability. Sprint Commc'ns, 554 U.S. at 273. An injury in fact involves a concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical, invasion of a legally protected interest. Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-1 (1992). The causation element of standing requires a connection between the alleged injury in fact and the alleged conduct of the Defendant. Id. The redressable element means that it is likely, and not merely speculative, that the injury in fact would be remedied by the relief sought. Id.

Defendants, in their motion to dismiss, explain how Plaintiffs fail to adequately establish the injury in fact element of standing:

> In the instant matter, [P]laintiffs summarily allege that they "will incur costs to repair the damages caused by [D]efendants' unlawful activity" [(Pl.'s Compl. ¶¶ 55 and 64) (emphasis omitted)] without any indication of when or why such costs might be incurred, and while explicitly excluding any allegations of personal injury, either present or future. [(Pl.'s Compl. ¶ 10)] . . . Plaintiffs have not alleged present, manifest or even imminent damages, or any

5

adverse consequences whatsoever. The allegations are purely subjective and hypothetical. (Def.'s Am. Mot. Dismiss 7).

Plaintiffs counter that the injury in fact is the cost of buying a product that they would not have bought, had facts that arose later been apparent at the time when they could have made a choice. (Pl.'s Opp'n 10, Mar. 28, 2011, ECF No. 37). In the same vein, Plaintiffs argue that they received something other than what was bargained for. Id.

Defendants supply strong argument showing that Plaintiffs fail to adequately establish that the instant scenario demonstrates injury in fact. On the spectrum of proof relevant to injury in fact, Plaintiffs' case presents more of an "abstract" notion of injury, rather than a harm that is "distinct and palpable." See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (citing Warth v. Seldin, 422 U.S. 490, 501; and O'Shea v. Littleton, 414 U.S. 488, 494 (1974)). Indeed, it can be assumed from the complaint that Plaintiffs might not have even discovered that "counterfeit mesh" was implanted without the letter from LMC describing the situation as such. Though Plaintiffs cleverly oscillate between contract and tort theories in an attempt to show that a harm amounts to "injury in fact" as envisioned under the standards for Article III standing, their arguments fall short of concrete proof. Thus, this Court lacks subject matter jurisdiction over Plaintiffs claim and must dismiss. Though no further analysis is required due to the lack of subject matter jurisdiction, this Court will engage in a brief analysis of each Count of the Complaint.

### B.  Count I: Violation of the New Jersey Consumer Fraud Act ("NJCFA")

Plaintiffs argue that their NJCFA claims are distinct and sustainable based on an economic injury theory, given they paid a premium for a product based on Defendants' misrepresentations. See Id. at 9; see also Medley v. Johnson & Johnson Consumer Cos., Inc., No. 10-cv-2291, 2011 WL

159674, at *2 n. 2 (D.N.J. Jan. 18, 2011) (DMC). Plaintiffs will not establish the elements required by the NJCFA based on the fact that their allegations are "founded in the principals of economic inequities, not tort . . . " (Pl.'s Opp'n 5). A claim under the NJCFA requires proof of: 1) an unlawful practice as defined under the Act; 2) ascertainable loss of moneys or property; and 3) a causal relationship between Defendant's unlawful conduct and Plaintiff's ascertainable loss. N.J.S.A. 56:8-19 (1998).

Plaintiffs state that Defendants' business practice of marketing, advertising and promoting counterfeit surgical mesh is "false, misleading, inaccurate and deceptive." (Pl.'s Compl. ¶ 58). However, Plaintiffs oppose Defendants' motion to dismiss with argument that focuses almost exclusively upon the heightened pleading requirement Defendants' suggest, and not at all upon the supplemental evidence that would buttress Plaintiff's otherwise conclusory claims. The NJCFA requires an unlawful practice such as an affirmative act, a knowing omission or a regulatory violation. Parker v. Howmedica Osteonics Corp., 2008 WL 141628, *2 (D.N.J. Jan. 14, 2008) (citation omitted). Plaintiffs did not specifically allege any conduct that tends to amount to an "unlawful practice" under the NJCFA.

Otherwise fatal to Plaintiffs' claim is the failure of proof problem with the contention that they never received the benefit of the bargain or "paid for a product that was of no value." (Pl.'s Compl. ¶ 63). Such allegations do not satisfy the NJCFA's "ascertainable loss" requirement, without more. Though the "counterfeit surgical mesh" has a price tag, the "no value" concept of it, considering Plaintiffs do not assert any physical injury or otherwise, is abstract. Plaintiffs do not provide specific proofs of harm to support, or upon which this Court could infer a quantifiable loss. Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 252 (2005); see also, Parker v. Howmedica

Osteonics Corp., 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008). Stating the expectation of a future loss, similarly fails to meet the requirement of the CFA, because it is too speculative. Id. This insurmountable problem is the same as that which precluded Plaintiff from establishing injury in fact for standing purposes. Plaintiffs fail to state a claim under the NJCFA.

### C. Count II: Unjust Enrichment and Common Law Restitution

Plaintiffs may not sidestep Article III standing requirements by basing their claim in contract theory. Plaintiffs allege that they would not have purchased the product if it was not sterile, Bard-manufactured, FDA approved or indicated for surgical use. As such, Plaintiffs contend Defendants were unjustly enriched by their purchase and that they are therefore entitled to restitution. The parties point to a matter previously before this Court, Koronthaly v. L'Oreal USA, Inc., No. 07-cv-5588, 2008 WL 2938045 (D.N.J. July 29, 2008), aff'd, 374 Fed.Appx. 257 (3d Cir. 2010) (Plaintiff asserted lipstick products contained lead in far greater amounts than permitted in candy by the FDA). The Third Circuit reviewed a similar issue of whether a consumer could recover on the basis that she did not know what she was getting or would not have purchased the product had she known certain details about it. Koronthaly, 374 Fed.Appx. at 258. In a short opinion, the Court held that the purchases were not made pursuant to a contract and therefore Plaintiff had failed to prove that that which would have precluded her from buying the product had formed part of the basis of any bargain. Id. at 259. Plaintiff's claim failed because she did not demonstrate a concrete injury in fact, and it could not otherwise be sustained by artful pleading dependent upon contract theory. Id. Despite Plaintiffs' contentions that this case is distinguishable from Koronthaly, the fact that Plaintiffs did not actually received the product they intended to purchase and paid for, does not affect Plaintiffs' failing contract claims. Rather, the Third Circuit guides that the focus is upon the harm, or in this case, the

lack thereof, rather than the buyer's expectation.

### D. Count III: Breach of Express Warranty

Plaintiffs fail to demonstrate specifically that they relied upon labeling or other expressions of promise that could have formed the "basis of the bargain." Plaintiffs frame their breach of express warranty claim almost identically to their breach of implied warranty claims. In other words, Plaintiffs submit no specific proof of promises that were expressed, whether they amounted to, as Plaintiffs suggest, assertions that the product was (1) Bard-manufactured, (2) sterile, (3) FDA approved, (4) indicated for surgical use or otherwise. Rather, Plaintiffs frame their claims upon assumptions of promise and information that the surgical mesh used was counterfeit. Establishing an express warranty requires more substantial proof. Indeed, the Third Circuit held that breach of an express warranty sounds in breach of contract and, as such, Plaintiffs' claim fails for reasons similar to those described in the prior section. Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479, 484 (3d Cir. 1965). This Court will not assume, even considering LMC's concession that the mesh was counterfeit, that these four expressions were specifically made and relied upon. Such a lack of specificity does not comport with the nature of the theories supporting consumer reliance upon an express warranty.

### E. Counts IV and V: Breach of Implied Warranty of Merchantability and Fitness for a Particular Purpose

Defendants convince this Court that, standing alone, the counterfeit nature of the surgical mesh "does not demonstrate that [Plaintiffs] or others could not use the product safely." (Pl.'s Opp'n 27). Plaintiffs do not supply any supporting facts, other than the counterfeit designation of the mesh, rendering the product valueless or unfit. Finally, Plaintiffs fail to assert any injury, and in fact

9

disclaim any physical harm, resulting from the product. Plaintiffs again rely on the abstract concept of the mesh's "zero value" without proving specifically how the product failed. Plaintiffs further fail to show that the product is generally or otherwise unfit for the ordinary purpose which it was used. Rather, Plaintiffs declare that the surgical mesh continues to work for the purpose for which it was designed, to this day, despite any misrepresentations or omissions regarding the brand or otherwise. Plaintiffs can sustain neither a claim of breach of implied warranty of merchantability nor fitness for a particular purpose.

## IV.   CONCLUSION

For the foregoing reasons, this Court hereby **grants** Defendants' motion to dismiss Plaintiff's complaint. An appropriate order, filed on this day, follows this opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:        May __31__ , 2012
Original:    Clerk
cc:          Honorable Mark Falk, U.S.M.J.
             All Counsel of Record
             File